EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* MIGUEL A. SERRANO, acusado y apelante.

Núm. 10123.—*Sometido:* Diciembre 1, 1943. *Resuelto:* Marzo 6, 1944.

*M. García González,* abogado del apelante; *R. A. Gómez, Fiscal del Tribunal Supremo,* abogado de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

El apelante fué sentenciado a cuatro años de presidio con trabajos forzados por un delito de atentado a la vida come-

tido en Fajardo el 30 de diciembre de 1941 en la persona de Benigno Santiago Barreto. Alega el apelante que el veredicto no está sostenido por la prueba; pero un examen del récord demuestra que la evidencia fué contradictoria y que existió prueba incriminatoria contra el acusado, que fué creída por el jurado y que es suficiente para sostener la sentencia.

La prueba del fiscal puede resumirse así: en el año 1941 el acusado prestaba servicios como cabo de la Policía Insular en la ciudad de Fajardo, y allá para el 27 de mayo del mismo año fué al colmado restaurante del perjudicado, en la misma ciudad, y le suplicó le prestase veinticinco dólares. El perjudicado accedió y le entregó un cheque por dicha suma, ofreciendo el acusado devolvérsela a razón de cinco dólares mensuales. El acusado no se ocupó de hacer abono alguno a la cuenta, y el 22 de diciembre del mismo año el perjudicado le requirió para que le pagase lo que le debía. El acusado se molestó, contestándole así: "No tenga cuidado que voy una noche de éstas a saldarle su cuenta," replicándole el perjudicado, "No se moleste, que yo vengo a cobrarle una cosa justa, un compromiso que usted hizo conmigo y yo buenamente se lo di." (T. de R., pág. 19.) En la noche del día de autos el acusado llegó al establecimiento del perjudicado, donde se hallaba éste en unión de varios amigos tomando licor sentados alrededor de una mesa, y se unió a ellos, tomando algunas copas, y como el acusado manifestara que deseaba tomar un licor más fuerte, el perjudicado indicó a su hijo, un muchacho, que le preparase algo al cabo, y el muchacho preparó una bebida y se la sirvió. El acusado la rehusó y dió un empujón al muchacho, diciéndole algunas palabras groseras, con motivo de lo cual el muchacho se echó a llorar. Uno de los presentes llamó la atención al cabo sobre su conducta impropia para con el muchacho, diciéndole que él debía darle una satisfacción al muchacho, contestándole el acusado que él no daba satisfacciones a chiquillos. Intervino entonces el padre, el perjudicado, y dirigiéndose

al acusado le dijo que aquél era su hijo y que debía tratarlo con más consideración. Al hacérsele esta indicación el acusado repitió que él no daba ninguna excusa, a lo que replicó el perjudicado, "Usted es un abusador." En ese momento el acusado cogió su revólver y, empujando al perjudicado, lo derribó, haciéndole un disparo mientras aquél estaba en el suelo. El perjudicado trató de protegerse colocándose entre la máquina registradora y la vidriera, haciéndole el acusado un segundo disparo y lanzándose el perjudicado al suelo para evitar ser herido. A la sazón llegaron unos policías y el acusado les ordenó que arrestaran al perjudicado. Uno de ellos lo agarró para arrestarlo, preguntándole el perjudicado que por qué razón lo iba a arrestar, que si el policía estaba loco. Replicó el policía que él tenía que obedecer órdenes, y en ese momento el acusado cogió el roten y le dió el primer golpe en la cabeza, hecho lo cual los policías empujaron al perjudicado y el cabo le infirió otro golpe, ordenando a la vez a la policía, "Echen ese bandido para la cárcel." Al salir del establecimiento le dió otro golpe por la espalda. Los policías se detuvieron entonces y el cabo les dijo, "¡Bah! Este asunto ya está todo terminado. Para la cárcel con este bandido." Mientras los guardias sujetaban al perjudicado, el acusado repetía los golpes por la espalda; y al pasar frente a la entrada de la residencia del perjudicado, volvió a darle dos golpes más y lo arrastraron hasta la esquina del Banco de Nova Scotia, frente a la farmacia de Rafael Emmanuelli y a la tienda de Natalio García. Allí volvió el acusado a darle otro macanazo que le privó del conocimiento, volviendo en sí el perjudicado cuando ya se encontraba en el Hospital de Distrito, donde quedó recluído por espacio de nueve o diez días.

El doctor Salvador Bousquet, que en aquella fecha ejercía en el Hospital de Distrito de Fajardo, declaró que el perjudicado fué conducido al hospital la noche del 30 de diciembre de 1941, siendo atendido por un interno; y que al día siguiente él lo examinó y encontró que presentaba dos

heridas: una en la región fronto-temporal derecha de dos y media pulgadas de largo, producida con un instrumento de hierro o con un palo, y otra también de dos y media pulgadas de largo en la región occipital izquierda; que el paciente tenía una presión arterial tan alta que le hizo pensar en una posible fractura del cráneo, por lo que ordenó le tomasen una radiografía, la que demostró dos fracturas lineales del cráneo, en la región parietal izquierda una, y la otra se extendía de la región parietal a la región occipital izquierda, midiendo de dos y media a tres pulgadas cada una de ellas. A preguntas del fiscal declaró que no recordaba si tenía contusiones en la espalda.

La prueba de cargo con respecto a lo sucedido en el colmado restaurante está corroborada por las declaraciones de las personas que se hallaban allí en el momento del suceso, y en cuanto a lo que sucedió frente a la Farmacia Emanuelli, el farmacéutico Rafael Emmanuelli declaró que en la madrugada del 30 al 31 de diciembre de 1941 se hallaba durmiendo en su casa, que es de altos, y oyó unos gritos en la calle; que se asomó por una ventana y observó que dos policías y el acusado llevaban arrestado a Benigno Santiago Barreto, y que mientras iba bajo arresto, el acusado por detrás le infería varios golpes con una macana; que el oía que Benigno Santiado Barreto decía, "¡Que me van a matar, ay, bendito!" y el acusado le decía ciertas palabras indecorosas que no es necesario repetir.

La prueba del acusado tendió a demostrar la defensa propia, pero el jurado no la creyó, y al así proceder no podemos sostener que actuó movido por pasión o prejuicio, o que incurriera en manifiesto error.

Se presume que toda persona prevé las consecuencias naturales de los actos que a sabiendas realiza. Consideradas la naturaleza del arma que innecesariamente utilizó el acusado, un revólver; las heridas inferidas con el roten al perjudicado en el cráneo, cualquiera de las cuales pudo causarle la muerte; y considerando además que no hubo

notable provocación por parte del perjudicado, y que las circunstancias que concurrieron en la comisión del delito fueron de tal naturaleza que demuestran en el acusado un corazón pervertido y maligno, es claro, a nuestro juicio, que si el perjudicado como consecuencia de la agresión hubiese muerto dentro del año y un día de recibidas las heridas, el acusado hubiese incurrido en el delito de asesinato. Mas como el acusado tuvo la suerte de que el perjudicado no murió a pesar de las crueles y repetidas agresiones de que fué objeto, el delito que cometió y fué imputado al acusado es el de atentado a la vida, previsto y castigado por el artículo 218 del Código Penal.

◼ Se queja el acusado de que la corte, después de haber presentado el fiscal su teoría del caso al jurado y de haber comenzado a declarar su primer testigo, permitió al fiscal retirar a dicho testigo y ampliar la exposición de su teoría, manifestando al jurado que había olvidado decirles que iba a presentar como móvil del delito el hecho de que el acusado debía veinticinco dólares al perjudicado, que éste se los había cobrado y que aquél, molesto por ello, ejercitó una venganza sobre el que le había hecho el favor de prestarle el dinero. Se queja además el acusado de que la corte admitió con su oposición el cheque debidamente endocaso por el acusado y cobrado por la persona a quien él lo endosó.

La dirección de los procedimientos durante el juicio está encomendada al juez y éste, en su discreción y en bien de la justicia, puede permitir cualquier alteración en el orden de conducir los procedimientos, siempre que con ello no se perjudiquen los derechos sustanciales de las partes. Es verdad que el artículo 233 del Código de Enjuiciamiento Criminal (ed. 1935), en su apartado tercero prescribe que después que el fiscal inicia el juicio expresando oralmente ante el jurado o la corte, según el caso, la naturaleza del delito que intenta probar, las circunstancias en que se cometió y los medios de prueba de que intenta valerse para justificar la acusación o denuncia, ofrecerá y practicará la prueba

que tenga en apoyo de dicha denuncia o acusación. Pero ningún precepto legal conocemos, ni lo ha citado el apelante, que prohiba que luego de hacérsele varias preguntas introductorias al primer testigo de cargo, el fiscal solicite y obtenga de la corte permiso para retirar provisionalmente al testigo y amplíe la exposición de la teoría del caso al jurado, agregando un medio más de prueba de que intente valerse para sostener la acusación o denuncia.

█ Aunque la prueba de móvil es más necesaria en caso de prueba circunstancial, nada impide que se use y a veces es conveniente presentarla en casos de prueba directa como el presente, en que la conducta del acusado es tan cruel y está tan desprovista de provocación que puede poner en duda la declaración de los testigos de cargo. *Cf. Pueblo* v. *Carreras,* 62 D.P.R. 156. El hecho de que durante la noche de los sucesos nada se dijera respecto a la deuda de veinticinco dólares que el acusado tenía con el perjudicado, no impide que el acusado, en todo o en parte, hubiese realizado los actos que se le imputan movido por rencor o el deseo de venganza con motivo de habérsele cobrado dicha deuda. Generalmente el acusado trata de ocultar el móvil que lo impulsa a cometer un delito, pues si así no lo hiciera, a menudo facilitaría considerablemente su convicción. No podemos, pues, convenir con la defensa en que erró la corte al admitir el cheque en evidencia, habiendo sido como fué debidamente identificado.

█ Por último la defensa trata de imputar conducta impropia al fiscal porque al terminar la presentación de su prueba, pero antes de que la defensa expusiese su teoría del caso al jurado, dirigiéndose a la corte, dijo:

"Con la venia de la corte y muy respetuosamente, debidamente identificado producimos en evidencia el cheque éste."

La defensa manifestó que se oponía solamente por ser consistente con su objeción anterior a la ampliación de la teoría del fiscal, y por ser consistente también con su moción para

que se eliminase aquella parte de la declaración del perjudicado que se refería al préstamo de veinticinco dólares. La corte admitió el cheque en evidencia. Solicitó reconsideración la defensa en cuanto a las tres resoluciones relacionadas con el cheque, es decir, lo sucedido con respecto a la ampliación de la teoría del fiscal, la negativa de la corte a eliminar la parte de la declaración del perjudicado referente al préstamo, y la que admitió el cheque en evidencia.

La corte denegó la reconsideración y tomó excepción la defensa. Fué entonces que el fiscal dijo:

"Yo quiero hacer constar en récord que el requerimiento de cobro de estos $25 fué hecho el día 22 de diciembre y los hechos que motivan este caso ocurrieron el día 30 del mismo mes y del cobro de la deuda el día 30 es que el acusado, molesto, con coraje . . ."

Con motivo de la transcrita manifestación, la defensa presentó a la corte inferior una moción solicitando se declarase un *mistrial,* alegando que el fiscal se había referido ante el jurado a hechos que no habían sido probados. Como la corte declaró sin lugar la moción, sostiene ahora la defensa que incurrió en error al denegar la moción solicitando se declarase un *mistrial.*

De la declaración de Benigno Santiago Barreto (T. de E., pág. 19), se infiere que el acusado se molestó cuando el 22 de diciembre el perjudicado le requirió para que le pagase lo que le debía; pero no aparece del récord que el día treinta, al entrar el acusado al establecimiento del perjudicado, manifestase en alguna forma que estuviese molesto. En cuanto a la transcrita manifestación del fiscal, ésa era un comentario legítimo hecho por el fiscal sobre aquella parte de la declaración del perjudicado al efecto de que el acusado se molestó el 22 de diciembre cuando le cobró la deuda. Si el acusado se molestó cuando se le cobró la deuda el 22 de diciembre y no volvió al establecimiento del perjudicado hasta el día treinta, conforme había anunciado antes, el fiscal podía inferir que el acusado estaba aún molesto, aunque ocultase su actitud mental.

*No encontramos que se haya cometido error que perjudi- que los derechos sustanciales del acusado, por lo que procede confirmar la sentencia apelada.*